UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
CHARLES DIDIER CALIXTE,                                  :
                                                         :
                                   Plaintiff,            :
                                                         :        MEMORANDUM AND
                   -against-                             :        ORDER
                                                         :
ACACIA NETWORK, SERA SECURITY, ALLIED:                            19-CV-2039 (MMH)
UNIVERSAL and G4S SECURE SOLUTIONS,                      :
                                                         :
                                   Defendants.           :
-------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

   *Pro se* Plaintiff Charles Didier Calixte brings this employment discrimination action

against Defendants Acacia Network ("Acacia"), Sera Security ("Sera"), Allied Universal

("Allied"), and G4S Secure Solutions ("G4S"), pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of

1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12101 *et seq.* (*See generally* Am. Compl., ECF No. 46.)[1]  Plaintiff

alleges discrimination based on race, color, national origin, gender, disability status, and age,

and retaliation.  Before the Court are Acacia's, Allied's, and G4S's respective motions to

dismiss the Amended Complaint for failure to state a claim, pursuant to Federal Rule of Civil

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___")
and pagination "___ of ___" in the ECF header unless otherwise noted.

Procedure ("Rule") 12(b)(6).  (*See generally* Allied's Mot., ECF No. 51; G4S's Mot., ECF No. 53; Acacia's Mot., ECF No. 64.)[2]  For the reasons set forth below, the motions are **granted**.

## I.   BACKGROUND

### A.  Factual Background

The following facts are taken from the Amended Complaint and its accompanying exhibits, which are *incorporated* by reference, and are assumed to be true for the purposes of this motion.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

Plaintiff is a black, Haitian American man in his early forties who speaks English "with a strong accent" because it is not his first language.  (*See* Am. Compl. at 13.)  This case arises from Plaintiff's former employment as a security guard by several different security companies between approximately 2018 and 2019.  Each company assigned Plaintiff to work at different job sites and Plaintiff reported to different supervisors.

#### 1.  Allegations Against Sera

Plaintiff worked for Sera as a security guard starting in or around October 2018.  (*Id.* at 14.)[3]  Sera assigned him to work at various sites to provide security, including at a men's shelter at a hotel operated by Acacia.  (*See id.* at 7, 39–41, 43–44, 47–48, 50–55; *see also* Acacia's Mem., ECF No. 64-1 at 3.)  Shortly after this assignment, Plaintiff experienced

---

[2] Sera has not appeared in the case, as discussed below.

[3] Plaintiff alleges that the discrimination against him began in approximately February 2018.  (Am. Compl. at 5.)  He later states, in an EEOC filing, that he started working for Sera in October 2018.  (Am. Compl. at 14.)  Based on the correspondence and other documents attached to the Amended Complaint, the relevant date is October 2018.

multiple incidents involving Hilda Kryeziu, the program director at the hotel, which he believes led to discrimination and retaliation.

In December 2018, Kryeziu met with all Sera morning shift security officers to announce new policies, including that security officers were required to stand for at least 15 hours during overtime shifts, that occupants of the shelter (referred to as "clients") should exit the building from the back door, and that security guards should scan clients before they entered the hotel. (*Id.* at 43.) Immediately after the meeting, she also removed black male security officers from the site "for no reason" and a male supervisor for talking back to her. (*Id.* at 43–44.)

In February 2019, Plaintiff had three workplace incidents involving Sera staff. First, on February 10, 2019, Plaintiff assisted another security guard, an African American woman, after an Acacia supervisor "belittled" her by asking her to leave the premises during an overnight shift; Plaintiff paid for an Uber to take her home. (*Id.* at 14, 45–46.) Second, on February 12, 2019, Plaintiff encountered a client sleeping in the hotel lobby who appeared intoxicated, but upon the advice of an administrative assistant on site, he allowed the client to remain in the lobby. (*Id*. at 35, 44.) After a few hours, the client walked away from the lobby. (*Id.* at 44.) When Plaintiff reported to work on February 13, 2019, Sera manager Mark Ramdas informed him that Kryeziu wanted Plaintiff removed from the hotel site because he had allowed an intoxicated client to return to the client's room. (*Id.* at 35, 44.)

The same day, Plaintiff emailed a manager at Sera to complain about his removal from the site and accused Kryeziu of being racist and of using her power "to mistreat black man

3

[*sic*]." (*Id.* at 35.)[4] Plaintiff also stated that he "want[ed] to bring the unfairness of what black man [*sic*] are going through in the security field industry." (*Id.*) Plaintiff forwarded the email to other Sera employees and received a response from Felix Cabreja, the apparent owner of Sera, who told Plaintiff to make an appointment to discuss his concerns with human resources. (*Id.*) Thereafter, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against Kryeziu. (*Id.* at 44.)

Subsequently, Plaintiff's work conditions changed. First, he noted discrepancies in his paychecks from Sera, which remained unresolved for several months. (*Id*. at 44, 53–54.) Second, Plaintiff's schedule changed from a desirable daytime shift five days per week, to an overnight "[g]rave yard shift" three days per week, resulting in fewer weekly hours overall and no overtime hours. (*Id*. at 44.) Third, Sera sent him to a new, less desirable worksite, run by Edwin Cabreja, Felix Cabreja's nephew. (*Id*. at 41, 44.)

In or around June 2019, Edwin Cabreja accused Plaintiff of harassing the program director at his worksite, which Plaintiff denied. (*Id*. at 52, 55.) Around the same time, Plaintiff was suspended from the work schedule. (*See id*. at 52.) Subsequently, Plaintiff met with Sera managers to discuss an issue with "F80 paperwork." (*Id.*) In follow-up email exchanges with Plaintiff, one manager explained that "[t]he days you were out of work was basically due to your unavailability due to your second job. At the conclusion of our meeting, we agreed that in the best interest of all parties, we would offer you employment elsewhere." (*Id.*) The

---

[4] According to Plaintiff, Kryeziu abused her power because the majority of Kryeziu's employees were female and she removed men without giving them an opportunity to "tell their side of the story" while allowing a female security officer to "defend herself." (*Id*. at 44.) Kryeziu discriminated against the black men based on their race and gender by requiring black men to "exit the building from the back door." (*Id*.)

manager instructed, "[i]f you wish to continue your employment with us, I suggest you report to our offices tomorrow at 10:00am and sign off on your new schedule.  If you refuse to sign and accept your new schedule you are then refusing your new assignment, which means you are resigning."  (*Id.*)

### 2. *Allegations Against G4S*

In approximately April 2019, Plaintiff began working for G4S, but "things went south" because Sera "decided to defame [his] character to [his] ('G4S') manager."  (*Id.* at 15.) Plaintiff's work hours were cut, and G4S sent him paychecks that contained errors.  (*Id.* at 15, 21.)   In one incident on September 30, 2019, his G4S supervisor yelled at him "in a disrespectful manner."  (*Id.* at 15, 17.)  G4S suspended Plaintiff on October 17, 2019, "for no apparent reason."  (*Id.* at 15.)

### 3. *Allegations Against Allied*

On August 28, 2019, Allied hired Plaintiff as a security guard, and he again began experiencing discrepancies in his paychecks and purportedly did not receive paychecks that he was owed.  (*Id*. at 14–15, 28, 44, 54.)   Plaintiff continued to request corrected checks throughout September and October 2019.  (*Id*. at 26–29.)  After raising claims with the New York State Labor Department, he did not receive any payment addressing the amount owed

until November or December 2020, and it was only a quarter of the amount he claims that Allied owed.  (*Id.* at 9, 23.)

### B.  Procedural History

Plaintiff filed the present action against Kryeziu[5] on April 3, 2019, alleging discrimination based on his gender and race.  (Compl., ECF No. 1.)[6]  Plaintiff filed another civil action in this district on July 2, 2019, alleging that Edwin Cabreja retaliated against him for filing this action.  *Calixte v. Cabreja* 19-CV-3965 (WFK) (E.D.N.Y.) ("*Cabreja*"). (*Cabreja* Compl., ECF No. 1.)  At an initial conference in this case, the Court stayed Acacia's response to the Complaint and directed Plaintiff to amend the Complaint to name his actual employers and to incorporate the retaliation claim alleged in *Cabreja*.  (July 19, 2019, Order, ECF No. 22.).  Plaintiff filed a new charge with the EEOC, naming Acacia, G4S, Allied, and Sera. (Sept. 15, 2020 Ltr., ECF No. 41; Am. Compl., ECF No. 46 at 12.)

After several extensions of the deadline to file his amended complaint, Plaintiff received a right to sue notice from the EEOC.  (Sept. 15, 2020, Ltr., ECF No. 41.)  The Court directed Plaintiff file his amended complaint by November 5, 2020.  (Sept. 18, 2020, Order, ECF No. 42.)  Plaintiff filed an "Amended Case" Notice on October 29, 2020, suggesting that he wanted to end his case against Defendants.  (Oct. 29, 2020, Notice, ECF No. 43.)  The Court scheduled a telephone status conference, but Plaintiff failed to appear.  (Dec. 3, 2020, Order, ECF No. 44.)  At a later status conference, Plaintiff appeared, and the Court ordered him to

---

[5] Kryeziu was terminated from the docket on April 22, 2019, because Title VII does not provide for liability against individual defendants; the Court instead construed the Complaint to name Acacia.  (*See* Apr. 22, 2019, Order, ECF No. 5 at 1 n.1.)

[6] The parties consented to jurisdiction by U.S. Magistrate Judge. (May 30, 2019 Order, ECF No. 11.)

file his amended complaint by January 28, 2021, and to attach his EEOC right to sue notice. (*See* Dec. 28, 2020, Min. Entry; Dec. 28, 2020, Order, ECF No. 45.)

Plaintiff filed the Amended Complaint on January 21, 2021, which asserted claims against Sera, G4S, and Allied, in addition to the claims against Acacia. (*See generally* Am. Compl., ECF No. 46)  The Amended Complaint also attached Plaintiff's EEOC right to sue notice, which was issued on September 8, 2020. (*Id.* at 12.)  At a later status conference, the Court stayed Acacia's response to the Amended Complaint pending service on the new defendants. (Feb. 4, 2021, Order, ECF No. 47.)[7]  Amended summonses were served on Allied and G4S. (*See* Am. Summonses, ECF Nos. 58–59.)  However, the amended summons to Sera was returned unexecuted because the company was purportedly no longer at the listed address. (ECF No. 57).[8]

Allied moved to dismiss, arguing that (1) Plaintiff fails to name Allied in any charge of discrimination; (2) his claims are time-barred because he did not file suit within 90 days of his right to sue; and (3) his claims fail to state a basis for relief. (*See* Allied's Mot., ECF No. 51.)

---

[7] At the conference, Plaintiff also stated that he agreed to voluntarily discontinue *Cabreja* in order to proceed on all his claims in one action. (*Id.*)  The Court issued a Report and Recommendation on April 13, 2021, recommending that *Cabreja* be dismissed without prejudice. (*See Cabreja* R&R, ECF No. 25.)  Plaintiff filed a letter on April 19, 2021, stating that he never asked to discontinue *Cabreja*. (*See Cabreja* Apr. 19, 2021, Ltr., ECF No. 26.)  Accordingly, the Court withdrew the Report and Recommendation and directed the Clerk of Court to issue a summons to Cabreja and for the United States Marshals Service to serve a copy of the Complaint on Cabreja, (*see* Apr. 30, 2021, Order, ECF No. 27); however, the summons was returned unexecuted on June 10, 2021. (*Cabreja* June 10, 2021, Summons, ECF No. 30.)  Subsequently, Plaintiff filed a letter indicating that he believed that "Sera Security is currently closed according to [my] research on Google not moved to a different address [*sic.*]." (*See Cabreja* June 10, 2021, Ltr., ECF No. 31.)

[8] Sera has never been served with a copy of the summons and Amended Complaint, nor has it appeared in this case.  Any references to "Defendants" for the remainder of this Order includes only G4S, Acacia, and Allied.

G4S filed a nearly identical motion to dismiss on May 26, 2021, arguing that (1) Plaintiff's claims are barred due to his failure to file suit within 90 days of receiving the right to sue and that (2) he fails to state a plausible basis for relief.  (G4S's Mot., ECF No. 53.)  Acacia also moved to dismiss, arguing that (1) there was no employer/employee relationship between Plaintiff and Acacia (alleging that only Sera employed Plaintiff) and that (2) the Amended Complaint fails to plausibly allege a claim for discrimination or retaliation.  (Acacia's Mot., ECF No. 64.)  Plaintiff opposed the motions to dismiss.  (Pl.'s Opp'n, ECF No. 65.)

In August 2021, the Court held a hearing on Defendants' motions to dismiss.  (Aug. 26, 2021, Min. Entry and Order.)

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), a court must liberally construe the complaint, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)) (quotation marks omitted).  When a plaintiff is proceeding *pro se*, a court must construe the pleadings liberally and interpret them as bringing the strongest claims they suggest.  *Tawfik v. Georgatos*, No. 20-CV-5832 (JS)(AKT), 2021 WL 2953227, at *2 (E.D.N.Y. July 14, 2021) (quotation marks and brackets omitted).  Despite this more relaxed standard, *pro se* pleadings must still comply with Rule 8 and plead sufficient facts to state a claim for relief.  *Id.*; *see also* Fed. R. Civ. P. 8.

"A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ. of the City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Tawfik*, 2021 WL 2953227, at *2.

8

Conclusory allegations are insufficient to state a claim. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Tawfik*, 2021 WL 2953227, at *4 (finding complaint failed to sufficiently allege discrimination under Title VII and ADA because claims were conclusory and did not allege facts suggesting plaintiff was discharged based on a protected characteristic).

## III.   DISCUSSION

### A.  Exhaustion of Remedies

G4S and Allied argue that Plaintiff failed to exhaust administrate remedies because he did not file the Amended Complaint within the 90-day statutory period.  (G4S's Mem., ECF No. 53-1 at 3; Allied's Mem., ECF No. 51-1 at 3.).[9]  However, Title VII's exhaustion requirement does not bar Plaintiff's action because the Court equitably tolled the deadline to amend the Complaint.

A plaintiff must file a Title VII complaint within 90 days of receiving their right to sue notice from the EEOC. *See Watson v. Richmond Univ. Med. Ctr.*, 412 F. Supp. 3d 147, 161 (E.D.N.Y. 2017).  However, "the Title VII exhaustion requirement is 'subject to equitable defenses.'" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489–90 (2d Cir. 2018). Equitable tolling can apply, "*inter alia*, when the presiding court has led the plaintiff to believe that he has done all that is required." *Briones v. Runyon*, 101 F.3d 287, 290 n.2 (2d Cir. 1996); *see also Stevenson v. N.Y. Dep't of Corr.*, No. 09-CV-5274 (ENV)(VVP), 2011 WL 13175927, at *3 (E.D.N.Y. June 29, 2011).

---

[9] Acacia did not raise this argument in its motion to dismiss.

Here, Plaintiff's 90-day deadline to file the Amended Complaint, based on the date he received his EEOC notice, was December 7, 2020. (*See* Sept. 15, 2020, Ltr., ECF No. 41.) After he reported that he had received the notice, the Court directed him to amend his Complaint by November 5, 2020. (*See* Sept. 18, 2020, Order, ECF No. 42.) Though Plaintiff initially filed an "Amended Case" submission that was not in the proper format, the Court liberally construed the submission as an attempt to amend within the statutory 90-day period from receipt of the EEOC notice and tolled the time to file until January 28, 2021. (Oct. 15, 2020, Notice, ECF No. 43; Dec. 28, 2020, Order, ECF No. 45 at 1 n.1.) Plaintiff met the deadline by filing his Amended Complaint on January 21, 2021.

Accordingly, because the Court applied equitable tolling here, and Plaintiff acted with reasonable diligence in complying with the *Court's* revised deadline, his Amended Complaint is timely.

## B. Failure to State a Title VII or ADA Claim

Turning to the merits, Defendants seek dismissal of Plaintiff's discrimination claims under Title VII, the ADA, and the ADEA, arguing that Plaintiff fails to state a plausible claim of discrimination. (Acacia's Mem., ECF No. 64-1 at 9; Allied's Mem., ECF No. 51-1 at 4–5; G4S's Mem., ECF No. 53-1 at 4.). The Court finds that Plaintiff fails to state a claim against Defendants on which relief can be granted.[10]

Under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

---

[10] Because Plaintiff has failed to sufficiently plead a claim, the Court will not address Acacia's employer-employee relationship argument or Allied's claims that Plaintiff has failed to exhaust his administrative remedies by failing to name Allied in the EEOC charge. As to the latter

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Similarly, under the ADEA, an employer may not "fail or refuse to hire . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff alleging discrimination under Title VII and the ADEA is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).  To defeat a motion to dismiss a Title VII discrimination claim, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was *a motivating factor* in the employment decision." *Vega*, 801 F.3d at 87 (internal citations omitted) (emphasis added); *see also Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015) (applying *Vega* standard to ADEA age discrimination claim).  For an ADEA discrimination claim, a plaintiff must allege that age was "the but-for cause" of the employer's adverse action.  *See Vega*, 801 F.3d at 86 (internal quotation marks omitted).

> A plaintiff can meet that burden through direct evidence of intent to discriminate . . . or by indirectly showing circumstances giving rise to an inference of discrimination. . . . A plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, . . .  or by otherwise creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination.

---

argument, Plaintiff included allegations regarding Allied's conduct in the narrative section of the charge.   (*See* Am. Compl. at 14.)

*Id.* at 87 (citations omitted).  In other words, a plaintiff must plausibly allege facts that show "at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Id.* at 85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (quotation marks omitted).

### 1.  *Material Adverse Employment Action*

An adverse employment action is "a materially adverse change in the terms and conditions of employment" that is  "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Gomez v. Stonybrook Univ.*, No. 14-CV-7219 (SJF)(GRB), 2016 WL 1039539, at *6 (E.D.N.Y. Jan. 28, 2016) (quoting *Vega*, 802 F.3d at 85) (internal quotation marks omitted), *adopted by* 2016 WL 1045536 (E.D.N.Y. Mar. 15, 2016).  "Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII."  *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010); *see also Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (determining that employer's enforcement of preexisting disciplinary procedures in reasonable manner was not an adverse employment action).  "Examples of materially adverse employment changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Vega*, 801 F.3d at 85 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

The Amended Complaint, liberally construed, plausibly alleges that Plaintiff suffered an adverse employment action.  Plaintiff alleges that he suffered the following adverse employment actions: (1) he was relocated from Acacia's site to a less desirable site; (2) his work hours were changed to the less desirable "[g]rave yard" shift; (3) he noticed discrepancies

in his pay stubs from Sera, G4S, and Allied; (4) Edwin Cabreja initiated a false incident report against him; (5) Sera fired him; (6) Allied fired him; and (7) G4S fired him after reporting "harassment and bad treatment."  (Am. Compl. at 7–10, 43–44.)  Whether the generation of a false incident report necessarily rises to the level of an adverse employment action is unclear. *See, e.g.*, *Joseph*, 465 F.3d at 91.  However, Plaintiff's allegations that Defendants changed his work hours, that his pay stubs did not reflect his hours worked, and that Defendants terminated him constitute adverse employment actions.  *See Vega*, 801 F.3d at 85; *Gomez*, 2016 WL 1039539, at *6.

### 2.  Inference of Discrimination

Discrimination can be inferred from—

(1) criticism of the employee's performance using "ethnically degrading" language; (2) "invidious comments" regarding other individuals in the employee's protected group; (3) treating individuals outside the employee's protected group more favorably; (4) the circumstances leading up to the adverse employment action; and (5) evidence that the employer treated the employee "less favorably than a similarly situated employee outside his protected group."

*Collazo v. Cnty. of Suffolk*, 163 F. Supp. 3d 27, 47–48 (E.D.N.Y. 2016) (quoting *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *9 (E.D.N.Y. Sept. 24, 2014)).

Plaintiff fails to adequately allege that the adverse employment actions resulted from any discriminatory animus on the part of Defendants based on his race, sex, color, national origin, or age.  While Plaintiff has adequately alleged that he is a member of a protected class as a black, Haitian American man (Am. Compl. at 13), there are no allegations tying these characteristics to his alleged treatment by Acacia, G4S, or Allied, even when construed

liberally.[11]   For instance, Plaintiff states that Defendants fired him, but he does not explain how those terminations were based on his race, national origin, color, sex, or age.  With respect to his termination from Allied, Plaintiff claims that he was terminated because he "refused to keep working" until he received the money that had been purportedly withheld in his paychecks, suggesting that the money may have been withheld because he was not working. (Am. Compl. at 10.)  He also states that G4S suspended him in October 2019 "for no apparent reason" (Am. Compl. at 15), which lacks an indication of discriminatory animus.   Thus, these actions, absent some indication of discriminatory animus, are insufficient to state a claim for relief under Title VII.  *See Eliacin v. Fiala*, No. 9-CV-438 (TJM), 2009 WL 4807610, at *2 (N.D.N.Y. Dec. 8, 2009) (dismissing claims where plaintiff alleged she was terminated after failing to come to work and there was no indication her termination was the result of discriminatory animus), *aff'd sub nom. Eliacin v. Cnty. of Broome*, 488 F. App'x 504 (2d Cir. 2012).

Plaintiff also has not alleged a nexus between his race, sex, color, national origin, or age and the incidents involving him calling an Uber for his colleague and allowing an intoxicated resident to return to his room.  To state a claim for discrimination, "a plaintiff must do 'more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his] race.'"  *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 422 (E.D.N.Y. 2014) (quoting *Barounis v. N.Y.C. Police Dep't*, No. 10-CV-2631 (SAS), 2012 WL 6194190, at *6 (S.D.N.Y.

---

[11] Plaintiff's Amended Complaint primarily focuses on discrimination he believes was due to his race and national origin and contains only one allegation with respect to his age.  (*See* Am. Compl. at 13 ("When I asked or requested for something.  They always favored young people.  Even when I made my request first.  They always retaliated me.").)

Dec. 12, 2012)); *see also Sutter v. Dibello*, No. 18-CV-817 (ADS)(AKT), 2019 WL 4195303, at *12 (E.D.N.Y. Aug. 12, 2019) (dismissing plaintiff's claims because plaintiff made no factual allegations "connect[ing] any action taken against [p]laintiff to either her race or sex beyond conclusory assertions that she was discriminated against because she is a white and because she is a woman."), *adopted by* 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019).

Here, Plaintiff's conclusory statements, including that Defendants have been "plotting against [him] as a black man [and they] intended to hurt me financially, psychologically, and stop me from working in the security field industry anymore" (Am. Compl. at 8), and that Defendants "used unlawful disparate treatment against me while they treated other ethnicities better than me" (*id.* at 13), absent more, are insufficient to move the allegations out of the speculative realm.  *See Vega*, 801 F.3d at 87; *Tawfik*, 2021 WL 2953227, at *4; *see also Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 268 (E.D.N.Y. 2009) ("[C]onclusory assertions are not entitled to the assumption of truth, and factual allegations must plausibly support the reasonable inference that plaintiffs are entitled to relief.") (citing *Ashcroft*, 556 U.S. at 681).

Plaintiff's gender-specific allegations also lack facts from which the Court can infer a discriminatory animus.  Plaintiff alleges that 70% to 80% of the employees at Acacia were female and that Kryeziu forced black men[12] to exit the building using the back door "without giving them the opportunity to give her their side of the story."  (Am. Compl. at 44.)  Plaintiff also alleges that "the only person [Kryeziu] allowed to defend herself was a female Security officer."  (*Id.*)  None of these allegations contain any basis for the Court to infer that a

---

[12] Plaintiff does not specify whether he is referring to residents of the shelter or other security guards.

discriminatory gender-based animus motivated Acacia's, G4S's, or Allied's actions. *See Vega*, 801 F.3d at 87; *Tawfik*, 2021 WL 2953227, at *4; *see also Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 228 (E.D.N.Y. 2016) (finding that plaintiff's "wholly conclusory" allegations were "insufficient to raise [plaintiff's] pleading above the speculative level.").

Finally, Plaintiff's generalized assertions about the experiences of black and Haitian people in the United States are insufficient to show that Defendants are liable for discriminatory conduct as to Plaintiff because they fail to articulate specific adverse employment actions or facts from which a discriminatory animus can be inferred. *See Vega*, 801 F.3d at 87 (stating plaintiff must allege an adverse employment action and facts from which discriminatory intent can be inferred to sustain a discrimination claim); *see also Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) (To be actionable for a Title VII claim, "the harm must be related to the employee's terms and conditions of employment.").

Accordingly, the Court finds that Plaintiff has failed to state a claim of discrimination based on his race, sex, color, or national origin under Title VII or his age under the ADEA.[13]

## C. Retaliation

Plaintiff also fails to plausibly allege a retaliation claim. An employer may not discriminate against an employee in retaliation for an employee's complaints regarding

---

[13] To the extent that Plaintiff has alleged any claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), these claims would also fail. *See Tawfik*, 2021 WL 2953227, at *4 n.2; *see also Carrington v. Mota*, No. 16-CV-8061 (GBD)(JLC), 2017 WL 3835883, at *14–15 (S.D.N.Y. Aug. 31, 2017); *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

unlawful employment practices.  42 U.S.C. § 2000e–3(a).  To survive a motion to dismiss, a "plaintiff must plausibly allege that: (1) [the] defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

In the context of a retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  A plaintiff can show a causal connection in retaliation claims directly or indirectly. *Littlejohn*, 795 F.3d at 319.  A direct showing involves evidence of retaliatory animus against the employee by the employer, and an indirect showing involves evidence of a protected activity close in time to discriminatory treatment or other circumstantial evidence.  *Id.* (finding that plaintiff's allegations that she was demoted after specific instances of her objecting to discrimination plausibly supported an indirect inference of causation).  A retaliation claim must plausibly allege that "a retaliatory motive was a 'but-for' cause of the adverse employment action." *Myers v. Doherty*, No. 21-CV-3012, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022) (affirming dismissal of retaliation claim for failure "to allege a but-for causal connection between protected activity and any adverse employment action"); *see Shargani v. New York City Dep't of Environmental Prote[c]tion*, No. 21-CV-337 (AKH), 2022 WL 1046764, at *3–4 (S.D.N.Y. April 7, 2022) (granting motion to dismiss in part because plaintiff made "no allegations as to a causal connection between his protected activity and the alleged

adverse action"); *Gooden v. Joseph P. Addabbo Family Health Ctr., Inc.*, No. 21-CV-6313 (RPK)(SJB), 2023 WL 2709735, at *6 (E.D.N.Y. Mar. 30, 2023) (same).

Here, Plaintiff makes various conclusory allegations regarding retaliatory conduct without specifying how these purportedly retaliatory actions were related to his participation in a protected activity. As to G4S, Plaintiff claims that he was yelled at by a manager and had errors in his paycheck because Sera "decided to defame [his] character" to G4S. (Am. Compl. 15, 17.) But this allegation does not claim that G4S engaged in this conduct because he complained of discrimination or any other unlawful employment practice at G4S. (Am. Compl. at 15;) *see Littlejohn*, 795 F.3d at 319. Additionally, as discussed above, Plaintiff alleges that Allied terminated him because he had stopped working. (*See* Am. Compl. at 10.) Thus, Plaintiff has not plausibly alleged that any report he made was the but-for cause of any retaliation he purportedly experienced.

Further, Plaintiff alleges that he was retaliated against "[a]s a result of [him] report[ing] racist behaviors" and "[a]fter [he] helped an African American woman at Acacia Network site." (Am. Compl. at 7.) However, Plaintiff does not explain precisely what "racist behaviors" he reported and when these reports were made. (*Id.*) Similarly, Plaintiff states, in conclusory fashion, "When I asked or requested for something. They always favored young people. Even when I made my request first. They always retaliated me." (*Id.* at 13.) Such conclusory allegations, absent more, are insufficient at this stage. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (finding that amended complaint failed to state retaliation claim, in part because of conclusory and vague allegations); *see also Pitton v. New York City Dep't of Educ.*, 148 F. Supp. 3d 217, 232 (E.D.N.Y. 2015) (finding that

plaintiff had failed to offer specific facts to substantiate assertion of causation in retaliation claim) (internal citations and quotations omitted).

Additionally, Plaintiff alleges that his work conditions changed after he filed an EEOC charge against Kryeziu, whom he connects to Sera and Acacia. (Am. Compl., ECF No. 46 at 41, 44, 53–54.) However, his allegations are insufficient to plead a causal connection directly or indirectly because he fails to allege the timing of the change in his work conditions, whether any of the Defendants were aware of the EEOC charge, or when any Defendants became aware of the EEOC charge. *See Shargani*, 2022 WL 1046764, at *3–4; *Gooden*, 2023 WL 2709735, at *6; *cf. Vega*, 801 F.3d at 90–91 ("As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity.")

In short, Plaintiff has failed to develop a retaliation claim beyond conclusory allegations because he has failed to allege facts sufficient to plausibly support an inference of retaliation by Acacia, G4S, or Allied. Accordingly, the Court finds that Plaintiff has failed to state a retaliation claim.

### D. Discrimination Under the ADA

Plaintiff's ADA claims also fail to state a claim for relief and suffer from similar defects as his Title VII claims. The ADA pertains to "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An individual is disabled if the person has "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(B). To establish a *prima facie* case of discrimination

under the ADA, a plaintiff must plausibly allege that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quotation marks omitted). Merely alleging a medical diagnosis or impairment is insufficient. *Ibela v. Allied Universal*, No. 21-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (determining that plaintiff failed to allege an ADA disability because he did not allege facts showing that his bipolar disorder impacted or substantially limited a major life activity).

Here, the Amended Complaint contains little to no detail regarding Plaintiff's disability claims. He merely states that "[t]he government agency who helped me to get hire[d] by those employers, knew that I was disable[d]. Because in the workplace [] application I reported to them that I was disable[d]." (Am. Compl. at 13.) In the cover sheet for his Amended Complaint, Plaintiff lists his disability as a "mood disorder" (*id.* at 6), without explaining how this "substantially limits one or more [of Plaintiff's] major life activities" within the meaning of 42 U.S.C. § 12102(1) or alleging that he suffered any adverse employment action because of his alleged disability. Similar to *Ibela*, in which the plaintiff attempted to allege a disability by stating that he had bipolar disorder, here, Plaintiff fails to sufficiently allege that his mood disorder is a disability because he does not allege how it impacts any major life activities. *See*

*Ibela*, 2022 WL 1418886, at *2. Accordingly, the Court finds that Plaintiff fails to state a plausible ADA claim.

## IV.   <u>LEAVE TO AMEND</u>

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (internal quotations and citations omitted). A court may *sua sponte* grant leave to amend but is not required to, and may deny leave to amend where the amends would be futile. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)[.]"); *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (finding that contention that court abused its discretion in not *sua sponte* granting leave to amend was "frivolous"); *see also Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."). Where a plaintiff has had ample opportunity to amend his complaint, and failed to address the deficiencies therein, a court may deny leave to amend. *See, e.g.*, *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 125 n.9 (2d Cir. 2022) (denying leave to amend where plaintiff had "previous opportunities to amend her pleadings and the bases for [the Court's] decision [on the motion to dismiss]" rendered any further amendments futile); *Joseph v. Springer Nature Am. Inc.*, No. 21-959, 2021 WL 6105369, at *2 (2d Cir. Dec. 21, 2021) (affirming dismissal

with prejudice where "[t]he problems with [plaintiff's] causes of action are substantive; better pleading will not cure them.").

Here, granting leave to amend would be futile. *See Soto*, 26 F.4th at 125 n.9. Although the Court granted several extensions to allow time for Plaintiff to obtain a right to sue letter from the EEOC, the Court advised Plaintiff that "an amended complaint completely replaces the original complaint; therefore, all claims plaintiff wishes to pursue must be in the amended complaint." (Sept. 18, 2020 Order, ECF No. 42.)  Plaintiff filed an "Amended Case" submission that did not comply with the Court's directive to include all of the claims he intended to pursue against his former employers. (*See id.*; *see also* Notice, ECF No. 43.)  The Amended Complaint included additional information, but the bulk of his claims concern Sera, not Acacia, G4S, or Allied.  Therefore, granting leave to amend the Complaint to assert claims against Acacia, G4S, or Allied, is not warranted.

## V.  **CONCLUSION**

For the reasons stated above, the motions to dismiss the Amended Complaint are granted.  The claims against G4S Secure Solutions, Allied Universal, and Acacia Network are dismissed with prejudice.  The Clerk of Court is directed to terminate these defendants from this case.

Plaintiff consented to receive this Memorandum and Order electronically. (ECF No. 4.) In an abundance of caution, the Clerk of Court is respectfully directed to mail a copy of this

22

Memorandum and Order and the docket sheet to Plaintiff at the address of record on the docket:

Charles Didier Calixte, 442 5th Avenue #2214, Manhattan, NY 10018.

The Court shall hold a telephone status conference with Plaintiff to discuss the next steps in this case, including his intent to proceed against Sera Security, on **Tuesday, April 18, 2023 at 11:00 a.m.**  A separate scheduling order shall issue.

**SO ORDERED.**

Brooklyn, New York
March 31, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge